# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| CLARK K. EVANS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-0134 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits,
Plaintiff Clark K. Evans has filed a Motion for Summary Judgment [Doc. # 12]
("Motion").  Defendant Michael J. Astrue, Commissioner of Social Security, has
responded, requesting that the administrative decision denying benefits be affirmed,
and Plaintiff has replied.[1]  Defendant's Response is deemed a motion for summary
judgment, to which Plaintiff has responded in his Reply.  Having considered the
parties' briefing, the applicable legal authorities, and all matters of record, the Court
concludes that Plaintiff's Motion should be **denied** and summary judgment should be

---

[1]     Response to Plaintiff's Motion for Summary Judgment [Doc. # 14] ("Response");
Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary
Judgment [Doc. # 15] ("Reply").  Defendant's Response, while not styled a motion
for summary judgment, seeks affirmance of the Commissioner's decision.

**granted** for Defendant.

## I.   BACKGROUND

### A.   Procedural Background

Evans filed an application with the Social Security Administration ("SSA") on June 30, 2005, seeking disability benefits under Title II and supplemental security income under Title XVI.  He alleged disability beginning November 21, 2002.  After being denied benefits initially and on reconsideration, Evans timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Philip R. Kline held a hearing on November 8, 2007, in Houston, Texas.[2] The ALJ heard testimony from vocational expert ("VE") Byron J. Pettingill and from medical expert ("ME") Steven S. Goldstein, M.D.  In a decision dated November 27, 2007, the ALJ denied Evans' application for benefits.[3]   On January 21, 2008, Evans requested review of the ALJ's decision by the Social Security Administration's Office of Hearing and Appeals.[4]   On May 4, 2008, the Appeals Council denied Evans'

---

[2]      R. 308-330 (hearing transcript).

[3]      R. 14-23 (ALJ Decision).

[4]      R. 9.

request to review the ALJ's decision, rendering the ALJ's determination final.[5]  Evans

filed this case on July 1, 2009, seeking judicial review of the Commissioner's denial

of his claim for benefits.[6]

### B.    Factual Background

Plaintiff Evans alleges disability beginning on November 21, 2002, as a result

of hypertension; neck injury; heart problems; diabetes, resulting in problems standing

and walking, shortness of breath, and slow healing wounds; toe amputation on July

5, 2005; and side effects from multiple prescription medications.[7]  For purposes of

disability benefits, Plaintiff's date last insured ("DLI") is December 31, 2007, and

Evans must establish disability existing prior to that date.   The ALJ found no

disability from Evans' alleged onset date of November 21, 2002, through the date of

the ALJ's decision on November 27, 2007.

The record shows that Evans was treated at the 4 Cs Clinic (Galveston County

Health District) from early 2003 through mid-2005.[8]  Evans was seen every few

months at the clinic, and sometimes more often.   He was treated most often for

---

[5]      R. 4-7.

[6]      Complaint [Doc. # 1].

[7]      Motion, at 1.

[8]      R. 217-68.

hypertension, headaches, back pain, and neck pain.[9]   The record also reflects occasional complaints of chest pains, shortness of breath and dizziness, sinus problems, and blood in the stool.   Evans took multiple medications, including medications for hypertension, diabetes, and pain control.

In early June 2005, Plaintiff stepped on a piece of metal that punctured his left foot through his shoe.  On June 6, 2005, he was hospitalized at the Mainland Medical Center for acute cellulitis (bacterial infection) of the injured foot.[10]  He was also noted to have diabetes and hypertension.  He was treated with intravenous antibiotics and pain medications.  On June 9, surgery was performed by Terry A. Siller, M.D., to drain "left plantar forefoot abscess" and for debridement of soft tissues;[11] on June 14, Evans had a second surgery for further debridement and to close the previous surgical incision.[12]  Evans had no complications from either surgery.  He was discharged on June 18, 2005.

---

[9]     Evans apparently had a work-related accident some time prior to 2003, in which his spine was crushed by a machine.  He required surgery on his cervical spine and, after surgery, had pain and restricted movement.  Although some documents in the record reference the injury, *see*, *e.g.*, R. 153, records from the time of the accident and surgery are not in the record.

[10]    R. 166-216 (records from Mainland Medical Center, 6/6/05 - 6/18/05).

[11]    R. 192.

[12]    R. 194.

After discharge, Evans continued to see Dr. Siller.[13]  On June 23, Dr. Siller's notes indicate that the infection was improved, that Evans was to return the following week for removal of stitches, and that he "appear[ed] to be leaning towards amputation of the fifth toe."[14]  On June 29, Dr. Siller's notes state that Evans had decided to proceed with amputation of the left fifth toe, given "deep ulceration" going almost to the bone, and the lack of progress with conservative treatment.[15]  Evans was given a prescription for diabetic shoes and custom shoe inserts.[16]  Evans' toe was amputated on July 5, 2005.[17]

In August 2005, Disability Determination Services informed Evans that additional information was needed to make a disability determination, and that a special examination with Swayam Prakash, M.D., had been arranged for August 30, 2005.[18]  Following the examination, Dr. Prakash wrote a letter that assessed Evans as having seven medical problems: (1) hypertension for fifteen years, recently fluctuating despite four current prescription medications to control blood pressure; (2) diabetes,

---

[13]     R. 156-60.

[14]     R. 157.

[15]     R. 158.

[16]     R. 160.

[17]     R. 138.

[18]     R. 151.

controlled by medication; (3) hyperlipidemia, for which Evans was medicated; (4) allergic rhinitus, for which Evans was medicated as needed;  (5) atrial fibrillation diagnosed in February 2003, for which Evans was medicated; (6) neck pain due to a work accident in which Evans' spine was crushed by a machine, requiring surgery on the cervical spine and resulting in continuing neck pain, for which he was medicated; (7) puncture wound to the left foot in June 2005, resulting in hospitalization and amputation of the left fifth toe, and because of which Evans was still walking with a crutch.[19] Dr. Prakash stated that the left foot would not heal for several more months, at which point it would be possible to assess whether Evans could perform normal activities.  The letter also opined that Evans' "major problem" was his chronic neck pain, which had caused him to leave his job.  His pain medications were not curing the problem, and he had not seen a specialist because of financial issues.[20]

On September 27, 2005, a Physical Residual Functional Capacity Assessment was completed by a medical consultant for the Social Security Administration.[21] Evans' primary diagnosis was listed as status post cervical fusion with metal plate, with secondary diagnoses of hypertension, diabetes, atrial fibrillation, and a left foot

---

[19]     R. 152-55.

[20]     R. 153, 155.

[21]     R. 143-50.

injury.  The assessment stated that Evans could occasionally lift 20 pounds and frequently lift 10 pounds.  It noted limitations on climbing, balancing, stooping, and crouching.  It further stated that he could stand, walk, or sit about six hours per day. However, the narrative recognized "limitations of heel and toe walking as well as walking without assistance" due to his left foot injury.[22]  The narrative also stated that Evans' neck movement was painful, that his hypertension was not well-controlled, and that his diabetes was controlled by medication.  The assessment concluded, "Alleged physical limitations not wholly supported by [evidence of record]."[23]

On October 10, 2005, Evans was transported by ambulance to the Mainland Medical Center and treated for hypertension.  He was discharged the same day.[24]

On July 9, 2006, Evans had an automobile accident and was treated in the emergency room at Mainland Medical Center for a sprained neck.  He was given a series of tests and pain medication and was discharged.[25]

On September 6, 2006, Evans was hospitalized at Clear Lake Regional Medical

---

[22]    R. 150.

[23]    R. 150.

[24]    R. 113-133.

[25]    R. 270-78.

Center for headache and chest pain.[26]  The records indicate that his hypertension and diabetes were uncontrolled because of noncompliance with physicians' instructions about medication.  Once medicated, his blood pressure was controlled.  He was discharged on September 9.

In October, 2007, Evans reported that he was taking medications for diabetes, cholesterol, hypertension, chest pain, and depression.[27]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[28]  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[29]  "An issue is material

---

[26]    R. 281-299.

[27]    R. 279.

[28]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[29]    FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*,
(continued...)

if its resolution could affect the outcome of the action.  A dispute as to a material fact

is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."[30]

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to

two inquiries: first, whether the final decision is supported by substantial evidence on

the record as a whole, and second, whether the Commissioner applied the proper legal

standards to evaluate the evidence.[31]  "Substantial evidence" is relevant evidence that

a reasonable mind might accept as adequate to support a conclusion.[32]  It is more than

a mere scintilla and less than a preponderance.[33]

When applying the substantial evidence standard on review, the court

scrutinizes the record to determine whether such evidence is present.[34]  In determining

---

[29]      (...continued)
        529 F.3d 335, 339 (5th Cir. 2008).

[30]      *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and
        quotation marks omitted).

[31]      *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d
        457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[32]      *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[33]      *Id*.; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[34]      *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan*
                                                                        (continued...)

whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[35] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[36] Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[37]   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[38]  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[39]

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Evans applied for both Social Security disability insurance and Supplemental

---

[34]   (...continued)
*v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[35]   *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[36]   *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[37]   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[38]   *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[39]   *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

Security Income (SSI) benefits.  Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured[40] *and* disabled,[41] regardless of indigence.

SSI benefits are authorized by Title XVI of the Social Security Act, and provides an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[42]  Eligibility for SSI is based on proof of disability[43] and indigence.[44]  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.[45]  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, however, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs

---

[40]    42 U.S.C. § 423(c) (definition of insured status).

[41]    42 U.S.C. § 423(d) (definition of disability).

[42]    20 C.F.R. § 416.110.

[43]    42 U.S.C. § 1382c(a)(3) (definition of disability).

[44]    42 U.S.C. §§ 1382(a) (financial requirements).

[45]    *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

must prove "disability" under the Act, which defines disability in virtually identical language.  Under both provisions, "disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[46]  The law and regulations governing the determination of disability are the same for both programs.[47]

## B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[48]   The

---

[46]    42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI).

[47]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[48]    *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

claimant has the burden to prove disability under the first four steps.[49]  If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[50]  Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[51]  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[52]

In this case, at step one, the ALJ determined that Evans had not engaged in substantial gainful activity since his alleged onset date of November 21, 2002.  The ALJ found at step two that Evans had five severe impairments: degenerative disc disease, status post cervical fusion, status post toe amputation, atrial fibrillation, and diabetes mellitus.  He further found that Evans did not have a severe mental impairment.  At step three, the ALJ concluded that Evans' impairments, singly or in combination, did not meet or medically equal a listed impairment in the relevant federal regulations.

Before proceeding to step four, the ALJ assessed Evan's residual functional

---

[49]     *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[50]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[51]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[52]     *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

capacity ("RFC") as follows: "claimant has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8 hour day, and sit for about 6 hours in an 8 hour day," but "must avoid commercial driving and dangerous or moving machinery."[53]  At step four, the ALJ determined that Evans was unable to perform his past relevant work.  At step five, he held that Evans could perform jobs existing in the national and local economy, including service writer, electronic assembler, and general office clerk.  When reaching this conclusion, the ALJ considered Evans' age, education, work experience, and RFC.  Based on the foregoing, the ALJ concluded that Evans was not disabled from November 21, 2002, through November 27, 2007, the date of the decision.

### C.      **Plaintiff's Arguments for Reversal**

Plaintiff Evans now raises five grounds for reversal of the Commissioner's denial of benefits.

#### 1.      **New Evidence**

Plaintiff argues that new evidence, received after the administrative hearing, would have materially changed the hearing's outcome if it had been presented to the ALJ.  The evidence in question, from 2006, shows that Plaintiff was hospitalized for two days complaining of headaches and chest pain due to uncontrolled hypertension

---

[53]      R. 18.

and diabetes.[54]

Remand to the Commissioner for consideration of new evidence is permitted under 42 U.S.C. § 405(g) only "'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"[55]  Evans therefore must make a showing of good cause, in addition to a showing of new, material evidence.[56]

Evans has not demonstrated good cause for his failure to submit the evidence previously.  Evans, in fact, did submit the records to the Appeals Council, and the Appeals Council made the evidence part of the administrative record.[57]  Although the records in question were not before the ALJ, they pertain to September 2006, more than a year before Evans' hearing before the ALJ on November 8, 2007.  Plaintiff's Motion provides no reason why this evidence could not have been submitted before or at the hearing.[58]  Remand therefore is not permitted under Section 405(g).

---

[54]   R. 281-301.  Evans' date last insured was December 31, 2007, just after his administrative hearing, and so these records are from the period relevant to his disability claim.

[55]   *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).  *See Hunter v. Astrue*, 283 F. App'x 261, 262 (5th Cir. 2008).

[56]   *Falco*, 27 F.3d at 164.

[57]   R. 7.

[58]   *See Martinez v. Astrue*, 252 F. App'x 585, 587 (5th Cir. 2007) ("any reports that pre-
(continued...)

Furthermore, Plaintiff does not explain how the evidence in question would have materially altered the ALJ's decision.  For new evidence to be material, there must be a reasonable possibility that the evidence would change the outcome of the Commissioner's decision.[59]   Although Plaintiff argues that the evidence further demonstrates the severity of his hypertension, diabetes, and their symptoms, the records show that Plaintiff's condition had worsened temporarily in September 2006 because he had not been taking his medications for two months.[60]  The records further indicate that, once medicated, Plaintiff's blood pressure was controlled.[61]  If a medical condition reasonably can be controlled by medication or surgery, it is not disabling.[62]  In addition, the ALJ considered Evans' hypertension and diabetes when making his determination.[63]  Plaintiff has failed to establish a "reasonable possibility" that the

---

[58]     (...continued)
dated the ALJ's decision should have been submitted to the ALJ if [the plaintiff] thought them pertinent, and he has shown no good cause for his failure to do so").

[59]     *Hunter*, 283 F. App'x at 262; *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir.1994).

[60]     R. 281-301.

[61]     R. 281.

[62]     *Mays v. Apfel*, 233 F.3d 575 (5th Cir. 2000); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

[63]     R. 19-20.

records from September 2006 would have changed the ALJ's determination.[64]

Plaintiff's request for remand based on new evidence is denied.

### 2.    Proper Development of the Case

Plaintiff argues that, because he had no comprehensive physical examination since September 2005, two years before his administrative hearing, the ALJ's failure to order a consultative examination constituted failure to properly develop the case. The medical expert at Evans' administrative hearing testified that a more recent comprehensive examination would "certainly" have told him more about Evans' functioning at that time.[65]   The hearing record reflects that Plaintiff's counsel requested the examination.[66]  The ALJ's Decision states:

> During the hearing, the claimant's attorney requested a consultative examination for the claimant.  The Administrative Law Judge denies this request because no additional information is needed (20 C.F.R. 404.1519a(a)(1), 416.919a(a)(1)).[67]

Plaintiff argues that the ALJ "failed properly to develop the case as to Plaintiff's degenerative spondylosis, depression, hypertension, fatigue, dizziness, headaches,

---

[64]     *See Hunter*, 283 F. App'x at 262.

[65]     R. 313.

[66]     R. 329.

[67]     R. 14.

hyperlipidemia, and numbness and tingling in his hands and feet."[68]  Plaintiff further argues that, because the ALJ did not order an examination, "the record was insufficiently developed to make an informed determination either as to whether Plaintiff meets or equals any Listing, or as to Plaintiff's residual functional capacity."[69]

As the Fifth Circuit held in *Carey v. Apfel*, an ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits."[70]  An ALJ who fails to order a consultative examination commits reversible error "when such an evaluation is necessary for him to make an informed decision."[71]  The ALJ decides whether such evaluation is necessary by examining the record, and the decision is committed to the ALJ's discretion.[72]

However, a claimant who alleges that the ALJ failed to fully develop the facts

---

[68]    Motion, at 5.

[69]    *Id*.

[70]    *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (*citing Brock v. Chater,* 84 F.3d 726 (5th Cir.1996); *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984)).

[71]    *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (5th Cir. 1984).

[72]    *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *see McCuller v. Barnhart*, 72 F. App'x 155, 160 n.5 (5th Cir. 2003).  Federal regulations governing disability claims state, "The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources."  20 C.F.R. § 404.1519a(a)(1). The same standard applies for SSI claims.  *See* 20 C.F.R. § 416.919a(a)(1).

is required to show prejudice:

> This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.  To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result."[73]

In this case, Plaintiff points out that the consultative examination was a full two years before the hearing, and at a time when his foot still was healing from surgery.  It therefore would be reasonable to expect that his condition in 2005 was different from his condition in 2007.

Nevertheless, Plaintiff has made no argument or assertion as to what a consultative examination in 2007 would have shown.  He was free to, and did, submit medical records from the period after September 2005.[74]  Plaintiff does not allege that his condition worsened after the consultative examination performed in September 2005.  He has pointed the Court to no records from after September 2005 that support his alleged need for a supplemental examination.  Instead, Plaintiff asserts that a new consultative examination "might result in any number of findings, including Listing-

---

[73] *Carey*, 230 F.3d at 142 (internal citations omitted) (quoting *Kane*, 731 F.2d at 1220); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.")

[74] *See* R. 113-133, 270-278, 281-299.

level disability" and that, "[w]ithout a competent examination, which Plaintiff requested, on the record, we simply do not know."[75]   Plaintiff's vague argument, which makes no reference to any particular medical condition or symptom, fails to demonstrate that he "could and would have adduced evidence that might have altered the result."[76]   Because Plaintiff has failed to show prejudice, the Court finds no reversible error.

### 3.    Grid Rule 201.14

Plaintiff argues that the ALJ erred in not finding him disabled under Grid Rule 201.14.

The ALJ determined that Evans was capable of light work.[77]  Because Grid Rule

---

[75]    Reply, at 2-3.

[76]    *Carey*, 230 F.3d at 142 (internal citations and quotation marks omitted).  Plaintiff bears responsibility to provide medical evidence supporting his claim of disability. 20 C.F.R § 404.1514; 20 C.F.R. § 416.912.

[77]    The ALJ cited the medical expert's conclusion that Evans had the residual functional capacity for light work.  R. 18 (noting further that, from June 2005 to September 2005, Evans was limited to "less than sedentary" exertion because of his foot injury and toe amputation).   The ALJ's Decision further stated,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8 hour day, and sit for about 6 hours in an 8 hour day. However, the claimant must avoid commercial driving and dangerous or moving machinery.

*Id*.  *See* R. 22-23 (further discussing RFC).

201.14 applies only to sedentary activity,[78] it does not apply to Evans' case.  To the

extent Evans is arguing that the ALJ erred in his determination that Evans' RFC was

light rather than sedentary, Evans cites to nothing in the record that supports his

argument.[79]  The ALJ's findings regarding Evans' RFC are supported by substantial

evidence,[80] and Plaintiff has failed to show any error.

### 4.    Credibility Assessment Based on Leading Questions

Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility

because he alleged certain symptoms and/or functional limitations in response to

leading questions by counsel.   The ALJ's Decision stated:

> In response to leading questions from his attorney, the claimant testified
> that his back and neck were painful.  He further stated that he had
> numbness and tingling in his hands and feet.  He testified that pressure
> on his arms and hands cause them to become numb.  Such responses to
> leading questions are entitled to considerably less weight than if the
> claimant had volunteered this information when asked on direct
> examination to detail his problems.[81]

Plaintiff does not specify how the testimony at issue, if credited by the ALJ, would

---

[78]    20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14.

[79]    Motion, at 6.  Evans, of course, bears the burden of proving that he suffers from a
disability.  *Perez*, 415 F.3d at 461.

[80]    *See Audler*, 501 F.3d at 447 (substantial evidence is relevant evidence that "a
reasonable mind might accept as adequate to support a conclusion") (internal
quotation marks and citations omitted).

[81]    R. 19.

have affected the ALJ's analysis.  Plaintiff's briefing makes no citation to the record in support of symptoms discussed in the testimony discounted by the ALJ.

The evaluation of a claimant's subjective symptoms "is a task particularly within the province of the ALJ."[82]  Plaintiff correctly notes that administrative proceedings in disability cases are inquisitorial rather than adversarial.[83]  Nevertheless, the ALJ's evaluation of a claimant's credibility "is entitled to judicial deference if supported by substantial record evidence."[84]

In this case, the ALJ's evaluation of Evans' credibility was supported by substantial evidence.  The ALJ concluded that Evans' medically determinable impairments "could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[85]  In support of this conclusion, the ALJ cited to the objective clinical findings.[86]  He further found that no medical evidence

---

[82]     *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *see Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008).

[83]     *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits") (citing *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971)).

[84]     *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990).

[85]     R. 20.

[86]     R. 20-21; *id*. at 21 (concluding that Evans' degenerative disc disease was corrected
(continued...)

supported Evans' allegations of drowsiness,[87] that Evans' alleged inactivity was not supported by the clinical findings, [88] and that no physician had stated that Evans was unable to work.[89]

Therefore, when evaluating Plaintiff's credibility, the ALJ did not rely solely on counsel's leading questions as to several symptoms, but rather relied upon the evidence in the record as a whole. Because the ALJ's credibility finding is supported by substantial evidence, this Court must defer.[90]

### 5.    Severity of Certain Additional Impairments

Evans argues that the ALJ erred in finding certain additional impairments not to be "severe." In particular, Evans urges that the following impairments, considered individually and in combination, are severe impairments: degenerative spondylosis; depression; hypertension; fatigue; dizziness; headaches; hyperlipidemia; numbness and tingling in hands and feet; and side effects of medications. He argues that the medical expert provided support for his claims of fatigue, dizziness, and drowsiness,

---

[86]    (...continued)
by surgery; that there was no evidence of motor, sensory, or reflex loss; and that Evans' hypertension and atrial fibrilliations had not been attended by complications).

[87]    *Id.*

[88]    *Id.*

[89]    *Id.*

[90]    *Villa*, 895 F.2d at 1024.

and that his testimony and filings have consistently alleged such symptoms.

The "severity" step of the sequential evaluation, which is the second step in the ALJ's analysis, imposes only a low burden of proof on the claimant. An impairment may be found not to be severe only if it is a "slight abnormality" with "minimal effect" on the individual and no interference with the person's ability to work.[91] The ALJ is required to consider the combined effects of a claimant's impairments.[92] The Commissioner may not use the severity requirement to summarily dismiss, without consideration of the remaining steps of the sequential analysis, the claims of those whose impairments are more than a slight abnormality.[93]

Evans has not cited the Court to additional medical evidence supporting the allegedly severe impairments he claims. Rather, the record citations in Plaintiff's brief direct the Court to Plaintiff's own claims regarding his symptoms.[94] Plaintiff also cites to the medical expert's testimony, in which the expert noted Plaintiff's

---

[91]     *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

[92]     *Id*. at 393.

[93]     *Id*. at 391.

[94]     *See* R. 72-73 (document filed with Plaintiff's appeal); R. 76 (self-reporting on Social Security Form SSA-3441); R. 89-90 (self-reporting on Daily Activity Questionnaire); R. 315 (Plaintiff's testimony at administrative hearing); R. 322-23 (same). Plaintiff makes one citation to medical records, in particular, a notation from August 2004 that he complained of fatiguing easily. The medical expert specifically testified regarding this record, R. 312, and the ALJ thus considered it.

complaints of fatigue and stated that no quantitative measure of fatigue was available.[95]  The Court finds that the ALJ's determination at step two is supported by substantial evidence.[96]

Moreover, Evans' argument regarding the severity of certain additional impairments is irrelevant because the ALJ did not dismiss Evans' claim based on the severity requirement.  The ALJ in fact determined at step two that Evans had five severe impairments,[97] and proceeded to steps three through five of the sequential analysis.  The ALJ's denial of Evans' claim was based on his analysis at step five, in which he found that Evans had the residual functional capacity to perform jobs that existed in the national and local economy.[98]  Additional grounds for a finding of severity at step two, as Evans now urges, would not entitle him a determination of disability.  "[H]aving a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed

---

[95]    R. 312.  Plaintiff also cites to the medical expert's testimony regarding possible side effects of Plaintiff's medications, which include dizziness and drowsiness.  R. 314. The expert specifically noted, however, that he saw no indication in the medical records that Plaintiff had suffered from such side effects.  *Id.*

[96]    *See Audler*, 501 F.3d at 477; *Perez*, 415 F.3d at 461.

[97]    R. 16 ("The claimant has the following severe impairments: degenerative disc disease, status post cervical fusion, status post toe amputation, atrial fibrillation, and diabetes mellitus").

[98]    R. 22-23.

the second step of the inquiry mandated by the regulations."[99]

## V.   CONCLUSION

For the foregoing reasons, the Court concludes Plaintiff has not shown the ALJ's decision should be overturned.  It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 12] is **DENIED**.  Summary judgment is **granted** for Defendant.

A separate final judgment will issue.

SIGNED at Houston, Texas, this 13th day of **July, 2010**.

Nancy F. Atlas
United States District Judge

---

[99]     *Shipley v. Sec. of Health and Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).  *See Ledezma v. Apfel*, 161 F.3d 8 (5th Cir. 1998); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).